Andrew McClain, J.,
delivered the opinion of the Court.
In this case the LaGrange & Memphis Railroad Company, as complainant, seeks, by bill of review, a reversal of a decree in Chancery, rendered 18tli April, 1859.
The following statement of facts will suffice to present an outline of the case.
On the 14th day of December, 1835, the Legislature of Tennesseb, by Act, incorporated the LaGrange & Memphis Railroad Company.
On the 16th day of June, 1840, John C. McLemore sold, and conveyed by deed of that date, with divers *424 conditions and provisions, to this company, 208 acres of land.
It is not controverted in this case, that the title of the company to this land subsequently became perfect. This land, or perhaps it may be more properly said, a portion of it, is the subject of the present controversy. It includes what is known as Fort Pickering, adjoining the city of Memphis.
About the years 1842 and 1843, and subsequently, numerous judgments for large amounts were recovered against this company; and these judgement creditors, who are defendants to this bill of review, sought by bills in Chancery to subject this property to the satisfaction of their judgments.
On the 18th January, 1851, the complainant, the LaGrange and Memphis Railroad Company, conveyed its track and right of way to the Memphis and Charleston Railroad Company, and also took or subscribed $30,000 stock in the Memphis and Charleston Railroad Company, and to secure the payment of this stock, gave a lien on its real and personal property.
On the 25th February, 1852, the Legislature of Tennessee passed An Act, amendatory of a previous Act, authorizing the Governor of the State to convey to the Memphis and Charleston Railroad Company, (which had been chartered in 1846), the right of way and all the interest' of the State in the track and depot grounds of the LaGrange and Memphis Railroad Company, and the Governor accordingly, on the 28th June, 1852, executed the conveyance.
By this same Act, it was further provided “that *425 tlie creditors of the Memphis and LaGrange Railroad Company shall have the right to satisfy their debts out of any of the property of said company, notwithstanding any lien of the State, and in preference to such lien.
Rainey, with several of the judgment creditors in law before mentioned, filed their original hill in Chancery in November, 1852, against the LaGrange & Memphis Railroad Company, and the Memphis & Charleston Railroad Company, and charged that the deed of the 18th January, 1851, was fradulent as to the creditors of the LaGrange & Memphis Railroad Company, and that it had never been registered; and prayed that it might be declared void and set aside as to them, and that the property of the LaGrange & Memphis Railroad Company might be subjected to the satisfaction of their debts.
In 1858 an interlocutory decree was pronounced in this cause, in favor of the complainants in that bill, declaring their right to subject this property to the satisfaction of their debts; and. a reference was made to the Master to ascertain and report the condition of this property, how much, if any, of it had been sold, and whether the $30,000 stock had been paid, and other matters.
In November, 1858, these complainants, Rainey and others, filed a supplemental bill against James Wicker-sham, Jno. C. Farrington, Phineas T. Scruggs, Elizabeth A. M. Searcy, Robert Searcy, E. B. Searcy, W. B. Sear-cy, Elvira C. Searcy and Martha C. Searcy, and Daniel B. Turner, guardian of the last named four parties.
*426 It is charged in this supplemental bill that these defendants to the supplemental bill are setting up and pretending to have title to the 208 acres of land; and the prayer is that the deeds and conveyances under which they are claiming title, be declared void, and the land subjected to payment of complainant’s debts
Neither the LaGrange and Memphis Railroad Company, or thg, Memphis and Charleston Railroad Company, were made parties to this'bill.
A short time before this supplemental bill was filed, other judgment creditors of the LaGrange and Memphis Railroad Company, we have before alluded to, viz.: Eugene Mageveny, administrator of Michael Leonard and others, also filed their original bill in Chancery against the LaGrange and Memphis Railroad Company, and the Memphis and Charleston Railroad Company, Elizabeth A. M. Searcy, ¥m. O. Searcy, Robert Searcy, E. B. Searcy, Elvira E. Searcy, and Martha C. Searcy, and Daniel B. Turner, guardian of the last named four, James Wicker-sham, John C. Farrington, George W. Trotter and wife? Sarah E. Trotter, Francis Cobb and Phineas T. Scruggs, and John C. McLemore.
The complainants in this bill, like the complainants in the case of Rainey and others, sought to subject these same lands of the LaGrange and Memphis Railroad Company to the satisfaction of their debts; and the prayer, objects and purposes of this bill were the same as those of Rainey and others.
The parties defendants to the original and supplemental bill in the Rainey case, were all made defendants to the Mageveny bill, and to the Mageveny bill it will *427 be observed that there were these additional parties, viz.: John C. McLemore, Francis Cobb and George W. Trotter and his wife, Sarah E. These additional parties were made such, not as having an interest in property other and different from that sought to be subjected to payment of the debts of Rainey and others by their bill, but as proper parties in reference to the same property mentioned in that bill.
On the same day, Mageveny, administrator, &c., and others, filed their bill. Peter Leonard also filed his original bill against the same parties, who are made defendants in the case of Mageveny, administrator, and others, with the exception that John C. McLemore, who is not made a party to the bill of Peter Leonard.
In this bill it is charged that he is the sole heir at law of Michael Leonard, deceased, who in his lifetime recovered a judgment against the LaGrange and Memphis Railroad Company, and that execution issued on the same and was levied on certain town lots, which constitute a part of this 208 acres, and that the same was sold by the Sheriff and bid off by said Michael Leonard, who having died, a deed was made for said lots so bid off to the said Peter as heir aforesaid, by the Sheriff.
This bill also prays that the Sheriff's deed, and other deeds by and through which ’Wickersham, Scruggs, and others, claim to have and derive title, be declared void, and removed as a cloud upon his title.
These three causes, viz: that of Rainey and others; Mageveny, administrator, and others; and Peter Leonard, were consolidated by consent of parties, before the Court, as it is alleged in the bill of review. It however ap *428 pears from other expressions in the bill, that it was not intended by that statement to admit that these causes were consolidated by consent of the complainants in the bill of review.
Answers were filed by 'Wickersham, Scruggs and others, claimants of these lands, and exhibits made of their title papers; and the same day these answers were filed, a final decree was rendered in the consolidated causes, purporting to declare the legal effect of the defendants’ deeds, and divesting and vesting title to these lands, and directing and ordering that these lands be appropriated to the satisfaction of complainants’ debts in the first instance. Some of the defendants did not answer.
This decree was rendered on the 18th day of April, 1859, and it is this decree which the complainant, the LaGrange and Memphis Railroad Company, seeks by the present bill to have reviewed and reversed.
The bill of review purports to set forth substantially the original bill of Rainey and others, and the exhibits thereto; and. among these, the deed from McLemore to the LaGrange and Memphis Railroad Company; also the deed from the Governor of the State of Tennessee to the Memphis and Charleston Railroad Company, before referred to; also the deed from the LaGrange and Memphis Railroad Company of the 18th of January, 1851, purporting to convey its interest in its track and right of way to the Memphis and Charleston Railroad Company, and to create a lien in favor of that company, as before stated, upon its property. This bill also sets forth the various orders made in the cause, and the interlocutory decree before referred to.; the supplemental bill, and the *429 various exhibits made thereto; the bills of Mageveny, administrator, and others, and Peter Leonard, and the answers thereto, with exhibits, and the various orders made in these causes, and also the 'final decree, pronounced January 18, 1859.
The final decree is copied into the bill of review; the balance of the record is stated substantially only.
It further appears upon the face of the bill of review, that Francis Lea, wife of Lorenzo, Lea, mentioned in the decree, is the Francis Cobb mentioned in the bill of Ma-geveny and others, as defendants to that bill. Francis Cobb — afterwards, by marriage, Francis Lea — and Sarah Trotter, wife of George W. Trotter, were heirs at law of James Merriweather. Elizabeth A. M. Searcy, defendant to supplemental bill of Rainey and others, and to the Ma-geveny bill and Leonard bill, was the widow of Gran-ville D. Searcy; and defendants, William O. Searcy, Robert O. Searcy, E. B. Searcy, Eliza E. Searcy, Martha C. Searcy, were the children and heirs at law of Granville D. Searcy. The necessity of attention to these particulars will appear in the sequel of this opinion. ",lT This bill was demurred to, and various causes of demurrer are assigned. The Chancellor overruled the demurrer, and the defendants have appealed to this Court.
The first question which presents itself for consideration, is this: Are we restricted to the bill of review in considering the demurrer, or is the entire record in the original causes open for consideration?
Bills of review are of two kinds — first, a bill of review for error apparent upon the face of the record; second, a bill of review upon discovery of new matter. The *430 present bill of review belongs to the class first mentioned.
In England, the enrollment of the decree is essential before it can be remanded on bill of review. With us, all decrees in equity are deemed to be enrolled as of the term at which they are passed, whether actually enrolled or not.
Judge Story, in his work on Equity Pleading, at section 634, says: “The constant defense to a bill of review for error apparent upon a decree, has been said to be by a plea of the decree, and demurrer against opening the enrollment. There seems, however, to be no necessity for opening the decree if it be fairly stated in the bill. The books of practice contain the poowers of a demurrer only to such a bill, and there are authorities to the same effect.”
If the defendant conceives that the original record has not been fairly stated in the bill of review, he can plead the original decree in bar of the suit by bill of review, and object by demurrer to the relief sought by the bill of review, on the ground that there is no error in the decree in point of law. The plea of the former decree, however, appears to be unnecessary when such decree is fully and fairly stated in the bill of review. Webb vs. Pell, 3 Page R., 370. But if defendants are content to demur only without plea, the Court, in that case, as in the case of any other kind of bill, is confined to the bill of review itself, and must determine the cause upon the statements and allegations of the bill.
So, in the present case, it is not competent, upon consideration of the demurrer, to look beyond the bill *431 of record into tlie original record; but we are confined to the bill of review, and must determine whether there is error apparent upon the face of the record as it is set forth in the bill of review.
Proceeding, then, upon this basis, we will first consider the point which has been so much elaborated in the argument, viz: Is the LaGrange and Memphis Railroad Company a legal entity.
This is a question which lies at the threshold of the investigation; for, if the complainant has no existence, of course the bill cannot be maintained, and it will be unnecessary to consider of the cause further.
It has been insisted in argument upon two grounds, that it is not a legal entity?
The first, is, that its charter has expired by efflux of time.
The second, is, that it surrendered its track of road and right of way to the Memphis and Charleston Railroad Company, and thereby became extinct.
By the Act of the Legislature, passed February 4, 1848, to which reference is made in the bill of review, it was provided that the LaGrange and Memphis Railroad Company may have six years further time to complete their road, in the event the same was not sold or transferred to the Memphis and Charleston Railroad Company.
It is now insisted that the road, not having been completed in this time, the charter has expired, and that the corporation is, therefore, dissolved. Blackstone says a corporation may be dissolved:
“ 1. By Act of Parliament, which is boundless in its operation.
*432 “ 2. By the natural death of all its members, in case of an aggregate corporation.
“3. By surrender of its franchises into the hands of the King, which is a kind of suicide.
“ 4. By forfeiture of its charter, through negligence or abuse of its franchises, in which case the law judges that the body politic has broken the condition upon which it was incorporated, and thereupon, the incorporation is void. And the regular course is, to bring an information in the nature of a writ of quo warranto, to inquire by what warrant the members now exercise their corporate power, having forfeited it by such and such proceedings:” 1 Black. Com., 485.
If the Act of incorporation fixes a definite time in which the charter shall expire, as for instance, in twenty years, there can be no doubt that when that period of time expires, the corporation is dissolved. But when the continuance of the corporation beyond a fixed time is made to depend upon the performance of a given condition, there can be no doubt that the non-performance of the condition is a mere ground of forfeiture. This, however, can be taken advantage of only by the State, in the proceeding in the nature of a quo warranto, and the existence of the corporation can never be collaterally called in question: Angel & Ames on Cor., 746; Commonwealth vs. Union Fire and Marine Insurance Company, 5 Mass., 230.
This is not only so when the cause of forfeiture arises from a failure to comply with the condition within a given time, as where there has been an extension of time to complete a road, as in the Act of 1848, to which we have referred; but the rule is the same *433 Avbere it is further expressly provided, that, upon failure to comply with the condition, the corporation shall be dissolved.
In the case of the People vs. the President and Directors of the Manhattan Company, 9 Wendell R., 351, the charter contained the proviso, “that said company shall, within ten years from the passing of this Act, furnish, and continue a supply of pure and wholesome water, sufficient for the use of all such citizens dwelling in said city, as shall agree to take it^ on the terms to be demanded by the said company, in default, whereof, the said corporation shall be dissolved.”
It was held, in a proceeding in the nature of a quo warranto, that the corporation was not ipso facto dissolved upon failure to comply with this condition but that such failure was only a cause of forfeiture, which could be taken advantage of by the State only in a proceeding instituted for that purpose, and must be judicially determined: Angel & Ames on Cor., 730.
It is not insisted, in the present case, that the forfeiture of the corporate existence has ever been judicially determined, and we have no hesitation in holding that there has been no dissolution of the corporation by reason of efflux of time.
It is next insisted that the complainant surrendered the track of its road and right of way to the Memphis and Charleston Railroad Company by deed bearing date 18th January, 1851, and thereby placed it beyond its power to perform the end and object of its creation and since that it was dissolved by its own act.
*434 In consideration of this point, it becomes important, in the first place, to explain this instrument-.
It is insisted by complainants solicitor, that it is not a deed, for the reason that the seal of the corporation is not attached; that such a conveyance could only be made effectual by an instrument under the seal of the corporation; and since, that there could, therefore, be no surrender by virtue of this instrument; and in support of the argument that it is not a deed, reference is made to this instrument, as exhibited in the original records — a transcript of all which have been filed with the record in the case of the bill of review.
But we have, in this opinion, already held that we can not, on demurrer without plea, look beyond the bill of review into the original record; and that if complainant fails to state the original record fairly for the defendants, they can only reach the original record through a plea.
This being the rule as to the defendants, it surely can not be maintained that if complainant has failed to state the original record as favorable for itself, as it might properly have done, that it shall be heard upon demurrer without plea, to insist that the Court shall look to the original record. Confining ourselves, then, to the bill of review, we will examine its statements in reference to this instrument of writing.
At one place it is alluded to thus, by way of repeating the substance of the original bill of Rainey and others, charging that that bill charged:
“That on the 18th day of January, 1851, the Memphis and Charleston Railroad Company purchased arid *435 took a conveyance from plaintiff for its track and right of way, and that a copy of said conveyance is, with the bill, filed and made a part thereof, as Exhibit C; and that in and by the same, plaintiff took $30,000 worth of stock in the Memphis and Charleston Railroad Company, and that plaintiff yet holds said stock; that, to secure the payment of said stock, plaintiff transferred, as a collateral to said Memphis and Charleston Railroad Company, a debt of $30,000 plaintiff1 held upon the State of Tennessee, and all of its real and personal estate, including lots in Fort Pickering; that said deed has never been recorded; that, so far as it attempts to convey the property of plaintiff, it is void and fraudulent as to the debts of said defendants, and should be canceled as a cloud upon said property, so that the same may be brought into market to pay said judgments; that they do not know whether the debt from the State of Tennessee, mentioned in said deed, has ever been collected or not, by the Memphis and Charleston Railroad Company, and applied by it in payment of said stock; nor do they know what part of said stock has been paid in, but require of defendants to their bill a discovery on said points. They claim a right to subject to the payment of their debts all the property of plaintiff attempted to be conveyed to the Memphis and Charleston Railroad Company, as such conveyance is void and invalid as against them. They claim that, if they are mistaken in their right to subject the property conveyed to the Memphis and Charleston Railroad Company to the payment of their debts, that they are entitled to have the stock mentioned in said conveyance sold to pay their debts, to *436 gether with all collateral securities given to secure said stock.”
In another place in the hill of Review, this instrument of conveyance from the LaGrange and Memphis Railroad Company to the Memphis and Charleston Railroad Company, of the 18th January, 1851, is thus alluded to:
“Exhibit C is a deed of indenture between the La-Grange and Memphis Railroad Company and the Memphis and Charleston Railroad Company, executed the 18th of January, 1851, reciting that, whereas the first of said companies, by their lawful agents, and attorneys J. B. Frith and Hugh Davis, in consideration that the second company agreed to build its road through or near the town of LaGrange, and to permit the LaGrange and Memphis Railroad Company to subscribe for 1,200 shares or $30,000 stock in said Memphis and Charleston Railroad Company, and undertake to collect a debt which the La-Grange and Memphis Railroad Company claimed as due them from the State of Tennessee, supposed to be $30,000, the LaGrange and Memphis Railroad Company agreed to transfer its road, right of way, immunities, privileges, etc., to the Memphis and Charleston Railroad Company; and to secure the payment of the 1,200 shares of stock, agreed to transfer its said claim against the State to the Memphis and Charleston Railroad Company, and to give them a lien on the real and personal property of the LaGrange and Memphis Railroad Company; and further reciting, that by said indenture, the LaGrange and Memphis Railroad Company conveyed its said track, and gave a lien upon its road and personal property to said Mem *437 phis and Charleston Eailroad Company, to secure payment of stock; and that the said Memphis and Charleston Eailroad Company agreed to use its endeavors to collect the claim of the LaGrange and Memphis Eailroad Company from the State; and further reciting, that the said Memphis and Charleston Eailroad Company did not by said deed, waive any of its rights under and by virtue of its purchase from the State of Tennessee.
“Said deed was executed to James C. Jones, President of the Memphis and Charleston Eailroad Company, by J. B. Frith and Hugh Davis.”
This instrument is here styled by the complainant in the bill of review, in stating and describing it, as a part of the original record, as a deed of indenture between the LaQrange and Memphis Railroad Company and the Memphis and Charleston Railroad Company, and is several times called a deed.
We are constrained, from the statements above set forth concerning this instrument, to hold that it was the deed of the complainant.
Let us next consider its effect. Did it operate as a dissolution of the corporation by way of surrender?
There appears to be some conflict in the authorities as to the necessity of acceptance of the surrender by the Government. The ease of Sin vs. Bloom, 19th Johnson E., with others, has been referred to in argument as authority for the position that the acceptance of the surrender by the Government is not essential. In Kent’s Commentaries this case is commented on, and the author says:
“It was held, in the Court of Errors in New York, *438 in Slu vs. Bloom, that the trustees of a private corporation may do what would be equivalent to a surrender of their trust, by an intentional abandonment of their franchises, so as to warrant a court of justice to consider the corporation as in fact dissolved. But that case is not to be carried beyond the precise facts on which it rests. It ought to be applied to a case where the debts due at the time of the dissolution are chargeable on the individual members, and then it becomes a safe precedent. It amounts to this: That if a private corporation suffer all their property to be sacrificed, and the trustees actually relinquish their trust and omit the annual election, and do no one act manifesting an intention to resume their corporate functions, the courts of justice may, for the salce of the remedy, and in favor of creditors — who, in such case, have their remedy against the individual members — presume a virtual surrender of the corporate rights, and a dissolution of the corporation. This is the utmost extent to which the doctrine was carried; and in such a case it is a safe and reasonable doctrine.”
The commentator holds the general doctrine to be, that the acceptance by the Government of the surrender is essential to effect á dissolution: 2 Kent, 311.
The cases which hold a contrary doctrine will be generally found to fall within the class where, by the charter of incorporation, the stockholders are made individually liable for the debts of the corporation. It is not contended that the LaGrange and Memphis Railroad Company falls within that class.
If it be conceded that the deed of January 18, 1851, which we have been considering, amounts to a surren- *439 cler, if accepted by the Government, has the Government, in point of fact, accepted the surrender? We have already made allusion to the 20th section of the Act of 1848, eh. —. That section provides: “That the La-Grange and Memphis Railroad Company may have six years further time to complete the said road, in the event the same is not sold or transferred to the Memphis and Charleston Railroad Company, as herein provided.” Was this a grant of the assent of the State in advance of the transfer, which was afterwards made the 18th of January, 1851?
In the 7th section of the Act of February 25, 1852, there is this provision, to which we have had occasion herein also to make allusion: “That the creditors of the Memphis and LaGrange Railroad Company shall have the right to satisfy their debts out of any of the property of said company, notwithstanding any lien of the State, and in preference to such lien.” This language, we think, is a recognition of the existence of the LaGrange and Memphis Railroad Company, at the date of that Act, which we see was subsequent to the date of the deed, which was January 18, 1851.
The true construction of the 20th section of the Act of 1848, is this: There had been extension of time for the completion of the LaGrange and Memphis Railroad by various Acts. The last extension had expired on the 1st of January, 1848; so that, between that day and the 25th of February, 1848, there was no grant of time. But during this period, the right of the State to enforce a forfeiture for failing to construct the road,- was complete. This right, however, was Avaived by the Act of the 25th *440 of February, 1848, and a further extension of six years allowed to complete the road, in the event the sarnie is not sold or transferred to the Memphis and Charleston Sail-road Company. If this is done, the waiver is withdrawn, and the right to enforce the forfeiture is revived.
This, we think, is the real attitude in which the LaGrange and Memphis Railroad Company and the State stand in relation to each other at present. "VYe perceive nothing ia the fact that the State disposed of its interest in this corporation, which militates in the least with this construction. No Act of Assembly authorizing a transfer, was passed; nor was any transfer made till after the date of this Act. The State, like another stockholder, had the right to dispose of its interest, if it chose to do so.
The LaGrange and Memphis Railroad Company has, doubtless, forfeited its right to longer existence as a corporation, in consequence of its failure to complete its road. It nevertheless remains a corporation. It has not been shown, nor is it pretended, that its dissolution has been judicially determined.
It is, therefore, still a legal entity, and can sue and be sued, for aught that appears upon the face of this bill of review.
The next matter, then, to be considered. of, is, whether there is error in the decree which complainant, the LaGrange and Memphis Railroad Company, ask may be rescinded and reversed. •
In the bill of review, the final decree is set forth, and it there appears that subsequent to the 1st day of June, 184b, the date of the deed from McLemore to *441 complainant, the complainant divided the 208 acres into blocks and lots; but at what time this was done, does not distinctly appear.
It is recited in the decree, that, in 1841 a judgment was rendered against the LaGrange and Memphis Railroad Company, in favor of Albert Hunter, for about $1,324; that on the 2d October, 1843, an execution was issued on this judgment, and on the 5th October, 1843, was levied on the 208 acres of land. Whether this land was then divided into blocks and lots, does not appear. On the 1st January, 1844, this land was sold by the sheriff, and James Merriweather Phincas T. Scruggs and Granville D. Searcy became the purchasers, at the price of $1,187.26; and on 26th February, 1844, the sheriff conveyed the same by deed to said purchasers.
It is further set forth in the decree, that on the 15th day of February, 1842, Michael Leonard recovered a judgment against the LaGrange and Memphis Railroad Company for $3,462, and execution issued 22d May, 1847, and was levied by the sheriff on the 15th day of •-■, 1849, on certain lots, describing them, which lots were a part of the 208 acres; and these lots were bid off at the aggregate price of $136, by the said Michael Leonard; and he having died, leaving Peter Leonard his sole heir at law, the sheriff, on the 5th February, 1858, conveyed by deed, all of said lots to said Peter Leonard and Daniel Hughes. This Daniel Hughes, it appears, had purchased some of these lots conveyed by this sheriff's deed at tax sale, at an aggregate price of four hundred dollars.
It is further set forth in the decree, that on the 13th *442 clay of January, 1855, judgment of condemnation was rendered by the Circuit Court of Shelby County, for non-payment of taxes for the year 1854, upon certain lots in Fort Pickering, describing them; and on the 2d July, 1855, they were sold and struck off to one Schobell, for the aggregate sum of $1,101.70; and the tax collector for the year 1854, and the tax collector for the year 1856, and the sheriff for the year 1856, jointly executed a deed of conveyance of all of said lots sold, to Schobell.
It is further stated, that it appears that a portion of the lots in the town of Fort Pickering, embraced in the 208 acre tract, have been sold and conveyed by the LaGrange and Memphis Eailroacl Company; but that it does not appear how many or what lots have been sold and conveyed, and the decree is not to affect titles perfected under such sales. The various deeds are also referred to in the decree by which the present claimants, Wickersham, Scruggs and the heirs of Searcy, deraign their title back to the three deeds we have mentioned, viz: the sheriff’s deed under the Hunter execution and sale; the sheriff’s deed under the Leonard execution and sale, and the joint deed of the two tax collectors and the sheriff. After reference to all these deeds, it is set forth that it is the opinion of the Court, that by these various deeds all the right, title and interest of the LaGrange and Memphis Railroad Company, and of the Memphis and Charleston Railroad Company, in and to the lots and unsold land embraced in said 208 acre tract, and all their right, title and interest in and to the lots embraced in the sheriff’s deed to Peter Leonard, and in *443 plainant in and to the said 208 acres of land, and the %e tax collector’s deed to Schobell, was divested and vested in the said Wickersham, Scruggs and the heirs of Searcy, subject only to the lien of the several creditors in these causes mentioned, which is especially reserved and retained, and a divestiture and vestiture of title is accordingly declared.
Is this decree erroneous? Story, in his work on Equity Pleadings, at section 420, says:
“In a bill of this nature, it is necessary to state the former bill and the proceedings thereon, the decree, and the point in which the party exhibiting the bill of revise conceives himself aggrieved by it, and the ground of law or matter discovered, upon which he seeks to impeach it.”
At section 634, he says:
“Neither can a party to a decree bring a bill of review, and claim a reversal of the decree for a supposed error, unless he is aggrieved thereby, whatever might have been his right to insist upon the error at the original hearing, or upon appeal.”
In 4 Viner’s Abridgement, 413, the law is thus laid down:
“No objection is to be made on a bill of review that is not assigned for error.”
Let us then see what has been assigned for error. At the conclusion of the bill there is this language:
“Complainant, the LaGrange and Memphis Railroad Company, would further respectfully show unto your Honor, that they are greatly aggrieved by said decree, in so far as it divests all right, title and interest of com- *444 other lands and lots mentioned in said decree, and vests the same in defendants, James Wickersham, P. L. Scruggs, and others, who in fact and truth, have no just right, legal or equitable, in said lands, or any part thereof, as complainant would be abundantly able to show upon a fair trial and investigation of the matter. Plaintiff would respectfully assign for error in said decree the following causes, an account of which, and divers others contained therein, they file this their bill of review.”
Then follows fourteen assignments of error, which are substantially as follows:
1. The LaGrange and Memphis Railroad Company was not made a party to the supplemental bill.
2. Because in the first decree in the Rainey case, the Clerk and Master was ordered to take proof and report upon the state of plaintiff's title, and yet the Clerk and Master made no report.
3. Defendants, Wickersham, Scruggs and others, merely answer the bills, and file no cross bill, and yet a decree is made in their favor, divesting title out of plaintiff and vesting it in them.
4. The decree is opposed to the allegations and prayers of the several bills, and this without a cross bill.
5. The final decree is rendered without answer, plea, demurrer, or pro confesso as to plaintiff, except there was pro confesso in the original bill of Rainey and others.
6. The decree was rendered as a decree by consent of parties other than plaintiff, the plaintiff not having plead, answered or demurred, and no pro confesso except aá to the original Rainey bill.
7. Because these causes were consolidated when there *445 was conflict of interest between the complainants in the different bills.
8. Because the decree gives to one Daniel Hughes $400, and charges same upon property of plaintiff, when said Hughes was not a party to the suit, and his claim not mentioned in the pleadings.
9. Because the decree is in favor of some defendants against co-defendants, and no cross bill nor answer in the nature of cross bill.
10. Because of want of interest of Peter Leonard, a sub-plaintiff, in one of the suits by his transfer of all his interest in the property in litigation, to "VVickersham and others, subsequent to institution of his suit.
11. Daniel B. Turner is made a party to the bills, and was served.with, process in one of the suits; and. said cause was heard without answer, plea or demurrer, or pro confesso as to him as to that suit; that he was never served with process as to the others, yet the decree was rendered without dismissal as to him.
12. The demurrer of Lea and wife, and Trotter and wife, was overruled, and leave given to answer, and without answer or pro confesso as to the decree, was rendered and no notice taken of them in the decree.
13. The final decree is inconsistent with the interlocutory decree in the Rainey case.
14. The final decree was rendered on the same day guardians ad litem were appointed, and answers filed, showing great haste.
It will be observed that there is no assignment of error upon the adjudication of the Court declaring the legal effect of these conveyances.
*446 An assignment of error ought to make special reference to some matter of law, and point out the error-A general allegation that a decree is erroneous, was insufficient.
Now, in reference to the rulings of the Court in regard to these conveyances, the charge of the bill as we have seen, is, that complainant is greatly aggrieved by said decree, in so far as it denies all right, title and interest of complainant in and to the said 208 acres, etc., and vests the same in Wickersham, Scruggs and others, who, in truth and fact, have no right, legal or equitable, in said lands or any part thereof, as complainant would be abundantly able to show upon a fair trial and investigation of the matter; and then follows the assignment of errors, none of which relate to the ruling of the Court adjudging the legal effect of these deeds. ■
But it is charged that, upon a fair trial, complainant would be able to show that Wickersham, Scruggs and others, have no title; and the assignments of errors relate chiefly to the rulings of the Court in matters of practice, by which it is alleged complainant was deprived of a fair trial.
It was insisted in the argument that the decree is erroneous because it appears that the land in the several sales already referred to, were sold in solido, while they were divided into lots and blocks at the time of these sales, and the case of Winters & Cross vs. The Heirs of Burford, is referred to as authority for the position that the sales were at least voidable and, perhaps void: 6 Cold., 328.
*447 It is sufficient to say that no assignment of error was made on this point, and thereupon we can not notice it. "Whether these sales were either voidable or void for the reason assigned in argument, is a question which does not arise upon the present state of the pleadings^ and thereupon the adjudication of the Court, declaring the legal effect, can not now be held qrroneous upon this ground. The 7th assignment of error is, these causes were improperly consolidated. This assignment is in these words:
“Because the Court joined together and consolidated these several suits wherein the parties, complainants and defendants, were different, where the subject matters of litigation were different, the complainants in some of the suits alleging title in plaintiff of property which they sought to subject to the payment of their debts as creditors, and in one of the suits complainant alleging title to some property in himself, and seeking to have clouds on his title removed, and his own title cleared up and approved.”
We perceive nothing in this to the prejudice of the complainant. If there was conflict of interest among the complainants in the different suits, this consolidation of these suits would seem to be to their prejudice rather than to the prejudice of the present complainant. The complainants in the Rainey bill and in the Mageveny bill, sought by their bills to subject the same property to satisfaction of the, debts. We perceive no error in this assignment for which the decree should be reversed.
The first assignment is, that complainant, the LaGrange and Memphis Railroad Company, was not made a ’ party *448 to the supplemental bill of Rainey and others. This assignment merits careful consideration. For convenience of illustration we will first allude to the case of Ma-geveny and others alone, and not as consolidated with the others, and consider of the several other assignments of error as applied to that case, and then recur to assignments Nos. 1 and 2, which apply only to the case of Rainey and others. As to assignment No. 5, as applied to this case, we think it has no foundation.
The assignment is, that the final decree was rendered without answer, plea, demurrer or pro confesso as to complainant, the LaGrange and Memphis Railroad Company.
The complainant in the case of Mageveny, administrator, etc., and others, was made a party defendant and was duly served with process. If it did not choose to appear and plead, answer or demur, it surely can not be made a ground of error on bill of review, that a decree was rendered in the case without a formal entry of an order pro confesso.
It does not appear how the complainant was prejudiced by this irregularity. As we have already seen, it is not even every error which may be taken advantage of upon appeal or writ of error which will be noticed on a bill of revew. It is only such as are pointed out by proper assignment, and appear to have operated to the prejudice of the party exhibiting the bill of review.
Assignment No. 3, as applied to the case of Ma-giveny, adm’r, and others, merits careful consideration. It is objected in this assignment, that defendants, Wick-ersham and others, claimants of these lands, having filed no cross bill, or answer in the nature of a cross bill, *449 yet obtain affirmative relief by a decree divesting title out of complainant, and vesting title in them.
It is held in the decree, in the first place, that, by virtue of these deeds the title had been divested out of complainant and the Memphis and Charleston Railroad company, and vested in defendants, Wickersham and others, and a divestiture and vestiture of title is there declared accordingly. The decree, therefore, is a mere adjudication upon the legal effect of the conveyances, and does not, as in case of like decree upon confirmation of a sale by the Master, operate as an original divestiture and vestiture of title.
The rulings of the Court upon this point, as matter of practice, is fully sustained by both English and American decisions, and especially by the decisions of this Court.
It will be borne in mind, that in the case of Ma-geveny and others, which we are now considering, it is charged in the bill that these deeds, upon which this adjudication was made, are fraudulent and void. Wick-ersham and others deny this. This was the leading issue in the cause, and directly involved the validity of these conveyances. There certainly was nothing irregular in determining this issue. But what interests did this issue involve? It not only involved the interest of Wickersham and others, who claimed under these deeds, and of Mageveny and others, who sought to remove them out of their way, so that they might subject the lands to the satisfaction of their debts; but it as certainly involved the interest of the LaGrange and Memphis Railroad Company, as it did that of Wickersham and *450 others, and of Mageveny and others. If .'the Court had held on this issue that these deeds under which Wicker-sham and others claim, were void, this would have restored title to the LaGrange and Memphis Railroad Company, there would be more plausibility in the argument that this adjudication of the Court on this issue, declaring the title to be in Wickersham and others, should not affect the Memphis and Charleston Railroad Company, without a cross bill, than the LaGrange and Memphis Railroad Company. There was no deed upon which this issue was formed that purported to convey title directly out of the Memphis and Charleston Railroad Company, into Wickersham and others, as was the case with reference to the LaGrange and Memphis Railroad Company. The Memphis and Charleston Railroad Company claimed an interest under the deed of January 18, 1851; and a separate issue was tendered by the bill, touching .the validity of this deed also. But we are not prepared to say that the adjudication on the deeds of Wickersham and others, declaring the title to be in them, without a cross bill, is erroneous, even as to the Memphis and Charleston Railroad Company. This company, however, are not complaining; and the case calls for no decision on that point, and we make none. As to the LaGrange and Memphis Railroad Company, it had an interest in common with Mageveny and others, that the deeds under which Wickersham and others were claiming should be declared void. If it had answered the bill of Magev-eny and others, its interest would have been to admit the charges of the bill on this point.
The Court might, without a cross bill, adjudicate *451 and determine tbe legal effect of these deeds, as between it and Wickersham and others. Lord Dnnsany vs. La-touche, 1 Schoales and Lefroy R., 137; 2 Schoales and Lefroy R., 690.
The case of Farquerson vs. Seaton, 5th Russ., 46, (Eng. Chan. Reports,) is a case directly in point. In that case it appears a second incumbrancer had previously filed a bill against a first incumbrancer and the mortgagor, seeking to have set aside one of the deeds of the first incum-brancer. This deed, however, was held to be valid in that suit. Afterwards the mortgagor filed this bill against the first incumbrancer to redeem, and prayed also, as the second incumbrancer had done, that this same deed of the first incumbrancer might be declared of no effect. It was held that the mortgagor was concluded by the decree in the first case, in which he and the first incumbrancer were co-defendants. Now, here was an issue formed between the second incumbrancer and the first incumbrancer upon the deed, the mortgagor being joined as a defendant in the cause. His interest in this 'deed being directly involved, and being a party to the suit, it was held that the adjudication of the Court on this issue was binding and conclusive as to the mortgagor. But this decree, in the present case, was correct upon another ground.
A recovery being decreed in favor of the complainants in the suit of Rainey and others, and in the suit of Mageveny, administrator, and others, for the amounts oí their several judgments against the LaGrange and Memphis Railroad Company, and their right to satisfaction of their debts out of the lands in controversy declared, it *452 became necessary, in order to make a complete settlement and adjustment of the rights of the parties before the Court, to go on, and, without a cross bill, determine the conflicting claims of the LaGrange and Memphis Kailroad Company, and of Wickersham and others, to this land; for if, upon a sale of these lands to satisfy these debts, there should be a surplus, without a determination of the rights of these parties, it would be impossible to know to whom to pay the surplus, if there should be any. The case of Ingram et als. vs. Smith et als., 1 Head, 427; and of Keeling vs. Heard and Hickerson, 3 Head, 593; and the case of Allen et als. vs. Beargrass et als., 1 Swan, fully sustain this decree on the point we are now considering.
The fourth assignment is, that the decree is erroneous, because it is in opposition to the allegations and prayer of the bill. The decree is directly upon the issue presented by the pleadings, and it surely can not be assigned for error that it was in opposition to the claim set up in the bill, and according to that set up in the answer.
As to assignment No. 6, if complainant, being served with process, failed to make defense, it was his own fault; and he can not now be heard to complain that those who did appear agreed upon a decree.
As to assignment No. 8, the $400 allowed in favor of Hughes, to be a charge upon the property in litigation, is not a matter of which complainant can complain until its title is made to appear.
As to assignment No. 9, we have already considered of the matter of that assignment in what we have said in regal'd to assignment No. 3.
*453 As to assignment No. 10, there is nothing in that to the prejudice of complainant, conceding the sale and transfer alleged to have, taken place.
It may be also said of No. 11, that there is nothing in it to the prejudice of complainant. The same thing may he said of 12 and 13.
As to No. 14, whatever there may be in this as an intimation of fraud, it could be taken advantage of by original bill, and not by bill of review.
Having now adverted to all the assignments which apply to the case of Mageveny, administrator, etc., and others, we have not seen, in any of these assignments, an error for which the decree can be reversed on a bill of review.
We will now return to assignments Nos. 1 and 2. These apply to the case of Rainey and others only. Assignment No. 1, is, that complainant was not made a party defendant to the supplemental bill in the case of Rainey and others.
Having considered of the case of Mageveny and others separately, let us apply the result arrived at in that case in considering of the case of Rainey and others. Having seen in the Mageveny case, that, for aught that appears in any assignment of error, the title of Wickersham, Scruggs, and the heirs of Searcy, to the lands in controversy is valid as against complainant, the LaGrange and Memphis Railroad Company, we will suppose that the Mageveny case had been tried separately, and that the same result had been arrived at. This case being disposed of and final decree rendered, we will suppose the case of Rainey *454 and others to have come on for trial at a subsequent term,, when the complainant, the LaGrange and Memphis Kail-road Company, is regularly before it as defendant, process having been served. Could not Wickersham, Scruggs and the Searcy heirs, according to the ruling in the case of Farquharson vs. Seaton, plead the decree in the case of Mageveny, administrator, and others, as a final adjudication upon the title as between them and the complainant? the subject matter of litigation being the same, and there being no party in the Kainey case who is not also a party in the case of Mageveny and others?
Now, the cases having been consolidated and heard together, it is difficult to perceive why the same result would not follow. If, upon the hearing of the consolidated causes, the Court perceives in the case of Ma-geveny, administrator, and others, in which the complainant, the LaGrange and Memphis Kailroad Company, is a defendant, that this company has no title, would it not have been an unnecessary delay and expense to postpone the case of Kainey and others, in order that complainant, the LaGrange and Memphis Kailroad Company, might be made a party defendant, when the Court already perceives in a case concerning the same subject matter, and wherever the parties defendant, the LaGrange and Memphis Kailroad Company, and all who have interest, are before the Court, that this company has no title.
What we have said in relation to assignment No. 1, dispenses with the necessity of saying anything in relation to No. 2. When we arrive at the conclusion upon the assignments that complainant has no title to the prop *455 erty in. litigation, it will follow that it could not be prejudiced by the failure of the Clerk to make report before final decree.
As to the case of Peter Leonard, assignment No. 10, is because of want of interest in Peter Leonard, sub-plaintiff, by his transfer of all his interest in the property in litigation to Wickersham and others, subsequent to the institution of this suit.
We cannot perceive any error in this of which complainant can complain. Peter Leonard, it appears from this assignment, sold his interest pending the suit, to Wickersham, Scruggs and others, defendants in that suit; and the final decree gives them the benefit of this purchase. There is certainly nothing in this of which complainants can complain in the present proceeding. There is no assignment of error calling in question the title of Peter Leonard under the sheriff’s deed.
The decree of the Chancellor overruling the demurrer to the bill must be reversed, and the demurrer sustained and the bill dismissed.